HEWITT *v.* MORGAN.

4-9686                                             246 S. W. 2d 423

Opinion delivered February 25, 1952.

*P. L. Smith,* for appellant.

*Alfred Featherston,* for appellee.

Ed. F. McFaddin, Justice. By this appeal, the husband, Fay Hewitt, challenges the Chancery decree which (I) granted the wife, Pauline Hewitt, a divorce; (II) denied the husband's cross-complaint for divorce; (III) adjudicated property rights; and (IV) awarded the custody of the two children. We discuss the assignments in the order named.

I and II. *The Divorce Decree to the Wife, and the Denial of the Husband's Cross-Complaint.* The parties were married in 1942. On August 30, 1950, the husband became enraged at his wife and physically chastised her. As a result, she suffered two black eyes, a broken cheek bone, and welts on her body. The wife returned to her parents, and filed this suit. The husband admitted the beating, but pleaded condonation and recrimination. As to the condonation, the evidence reflects that the wife slipped away from the husband as soon after the beating as she could, so we find no evidence of condonation.

By his defense of recrimination, the husband not only sought to defeat his wife's suit for divorce, but also

to gain a decree on his cross-complaint. Recrimination is discussed in some of our recent cases. See *Widders* v. *Widders,* 207 Ark. 596, 182 S. W. 2d 209; and *Young* v. *Young,* 207 Ark. 36, 178 S. W. 2d 994, 152 A. L. R. 327. The husband attempted to show that the wife had been guilty of adultery which, he claimed, occurred after the separation. In a written opinion, the Chancellor thoroughly weighed and discussed the matter. Without detailing the evidence, it is sufficient to say that we agree with the statements contained in the Chancellor's opinion:

"The testimony offered by the defendant as to the actions of the plaintiff at Malvern, when considered alone, and if unexplained, would be incriminating; however, plaintiff and others offer an explanation of those circumstances. So the result is, that the circumstances adduced in support of the charge of adultery are capable of two interpretations, one of which is consistent with plaintiff's innocence, and, after a study and consideration of the whole record on this issue, the Court cannot say that the charge of adultery is sustained by a preponderance of the evidence. So defendant's cross-complaint charging adultery on the part of the plaintiff must be dismissed for want of equity."

We affirm the Chancery decree granting the wife a divorce, and refusing the husband's cross-complaint.

III. *The Property Settlement.* In April, 1946, the husband purchased a house and lot in Antoine, Arkansas, for a cost of $1,000 and the deed was made to the husband, as grantee. The sum of two hundred dollars ($200) was paid in cash, and the balance in deferred installments. The Chancery decree directed that the said real estate be sold, and the proceeds divided equally between the husband and wife. We hold that the wife's interest in the real property is that stated in § 34-1214, Ark. Stats., which is a one-third interest for life. The wife was her only witness in regard to the property, and her testimony was as follows:

"Q. What kind of real estate . . . do you and your husband own?

"A. We own our home in Antoine, house and lot, worth $1,000. . . .

"Q. How is the title to this property? Is it deeded to both you and your husband?

"A. To both of us, yes. . . .

"Q. Will you please attach the deed to your deposition? . . . .

"A. I don't have the deed. . . .

"Q. You may state from whom you bought this property, what price you paid, and what part of the money, if any, you contributed.

"A. Jack Mosely. $1,000. I did without everything for about three years to get it paid for. Payments were $100 each six months."

The deed—of record since 1946—was introduced in evidence by the husband; and it was *not* a joint deed. The husband was the sole grantee; and he alone had been liable for the purchase price. To sustain the Chancery decree, the appellee cites *Williams* v. *Williams,* 186 Ark. 160, 52 S. W. 2d 971; and *Price* v. *Price,* 217 Ark. 6, 228 S. W. 2d 478. In those cases there was either a partnership between husband and wife, or a direct payment by the wife from her funds. Neither factor is present in the case at bar. Furthermore, we find no evidence sufficient to establish a trust, as was discussed in *Harbour* v. *Harbour,* 207 Ark. 551, 181 S. W. 2d 805.

In short, we hold that the evidence is insufficient to take the case at bar out of the statute (§ 34-1214, Ark. Stats.), which gives the wife a one-third interest for life in the real estate. As to the realty, the Chancery decree must be reversed. The wife's expectancy can be reduced to its cash value and the property sold by order of the Chancery Court, on petition of either party. See *Biddle* v. *Biddle,* 206 Ark. 623, 177 S. W. 2d 32. The Chancery decree—giving the wife one-half of the personal property —is in all things affirmed, because there is ample evidence that the wife paid for much of the household goods.

IV. *The Custody of the Children.* Two boys were born to the marriage; and at the time of the divorce decree, they were respectively 4 years and 3 years of age. By this appeal, the husband challenges not only the custody order as awarded in the divorce decree dated February 12, 1951; but also challenges the order of the Court of August 20, 1951, refusing to modify the original custody order. In his memorandum opinion of February 12, 1951, the Chancellor used the following language:

"If it can be said that these children are unfortunate in their parents, there is considerable testimony to show that they are fortunate in their grandparents,—all four of them. The Court is satisfied that the children would be treated kindly and properly reared in the home of either the maternal or paternal grandparents and it is to the credit of these grandparents that both doors are open to these little boys. . . .

"The husband intends, if awarded their custody, having his parents help him take care of and rear them, and the evidence shows that the paternal grandparents love the boys and would furnish a good and fitting home for them.

"The plaintiff and the children, after the separation of the parties, went to her parents at Delight. The maternal grandparents are, and have been, caring for the children and offer to help the mother care and provide for them, to see that they are kindly treated and properly reared, if awarded to the mother. . . .

"Therefore, considering all surrounding circumstances, the Court is of the opinion that the custody of these two boys should be divided between the husband and wife, each having the custody of both boys together for six months at a time until the oldest child shall become six years of age. At that time, if there has been no change in circumstances to warrant a different arrangement, the mother shall have the custody of the children during the school term and the father during the vacation period. . . . While the children are in the mother's custody, the father shall be allowed to visit

them at all reasonable hours. While the children are in the father's custody, the mother shall be allowed to visit them at all reasonable hours.''

When we take into consideration the fact that the four grandparents of the children live no great distance apart, and are good, substantial, Christian people, we cannot say that the custody order of February 12, 1951, was erroneous.

The appellee, Pauline Hewitt, remarried, and is now Mrs. Morgan. Claiming such remarriage to constitute a change of conditions, the appellant, Fay Hewitt, petitioned the Chancery Court to give the father the entire custody of the children. A hearing was held on August 20, 1951, and the Chancellor refused to make any change in the custody order. In the light of the appellant's testimony as to his intention to take the children to Texarkana, we cannot say that the Court was in error in refusing to change the custody, even if the evidence heard on August 20th be properly before us—a matter to be discussed in the next section of this opinion. We express the hope of the Chancellor that for the next two years, these little boys should be with their grandparents.

V. *The Record.* The appellee claims that the appellant has failed to comply with Act No. 139 of 1951, regarding the evidence in this case. Appellee says that § 3 of the Act was violated in that the transcribed record was never submitted to her counsel for approval. As to the evidence taken at the hearing of August 20, 1951, the appellee might make such a contention. That hearing was after the effective date of the 1951 Act, and the evidence was taken *ore tenus*.

A different situation exists, however, as to the evidence taken prior to the decree of February 12, 1951. Even if Act No. 139 of 1951 should be applicable to a case tried before the enactment of the law, nevertheless, the appellee's contention must fail because all of the evidence, taken for the trial and decree of February 12, 1951, was taken by *deposition*. Section 1 of the said Act No. 139 says:

"*Depositions.*—Where in cases in equity testimony has been taken by deposition, such deposition upon the filing thereof shall become a part of the record and need not be brought into the record by bill of exceptions."

At all events, the evidence leading up to the decree of February 12, 1951, is properly before us; and we are reversing only a portion of that decree.

We hold that the wife has only a one-third interest for life in the real property; that her expectancy may be reduced to its cash value; and that the property may be sold by order of the Chancery Court on petition of either party. In all other respects, the decree is affirmed. Appellant will pay all costs.