## LOPEZ *v.* LOPEZ

[No. 101, October Term, 1954.]

510

*Decided March 23, 1955.*

*Motion for rehearing filed April 12, 1955, denied April 14, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Susan Jane Hendershott* for the appellant.

*Roscoe H. Parker,* with whom were *Theodore L. Miazga* and *Matilda M. Miazga* on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

This appeal was brought here by Soledad Leirado Lopez, of Silver Spring, from a decree of the Circuit Court for Prince George's County granting her a divorce from her husband, Alejo Lopez, of Edmonston, and awarding her permanent alimony and a counsel fee for her solicitor.

The parties were born in Spain. Complainant came to Cuba in 1918. Defendant followed in 1921 and got a job in a sugar mill. They were married by a priest

in a Catholic church in Havana on February 4, 1921. They lived together eight years and have two sons and one daughter. In 1929 defendant, leaving his wife and three children in Cuba, came to the United States to seek another job.

In her suit for divorce filed on April 26, 1954, about a quarter of a century after the separation, complainant alleged that defendant sent her and the children to Spain in 1931, and he promised that as soon as he was able he would "come to Spain and get his family or else send for them to come to the United States." Complainant further alleged that defendant met a young woman named Helen Cammarata in Connecticut in 1937; that she bore him an illegitimate child; and that on July 26, 1946, defendant, although not divorced, went through a marriage ceremony with his paramour in Westport, Connecticut; and that since that time he has been living in adultery with her and has three children by this putative marriage.

Complainant prayed for a divorce, alimony, counsel fees, a division of defendant's personal property between the parties, a writ of *ne exeat* to prevent defendant from leaving the State without leave of the Court, and an injunction to prevent him from transferring any of his property pending disposition of the case.

On April 26 the Court issued a writ of *ne exeat,* and defendant thereupon filed a bond in the sum of $10,000 to guarantee that he would not go out of the State without leave of the Court.

On May 14 the Court ordered defendant to pay complainant alimony *pendente lite* at the rate of $50 per week, to pay complainant's counsel $100 as an initial counsel fee, and to endorse in blank his stock in the Lopez Construction Company, Inc., to be held in escrow by Theodore L. Miazga, attorney, for complainant's protection.

Complainant testified that after 1937 defendant ignored all of her pleas for money to help support her and the children, and that she worked for some time as

a laborer in the fields in her native province of Lugo. She further alleged that after the termination of the Civil War in Spain in 1939 defendant was in a financial position to bring his family back to America, but he refused to do so.

Later on, however, after the children had reached maturity, they came to the United States and received some assistance from their father. After they located jobs, they arranged to bring their mother to this country. She arrived in April, 1954, and immediately entered the instant suit. For a short time she resided with one of her sons in Washington. Thereafter she moved to Montgomery County.

According to the evidence, defendant had jobs in New Jersey, New York, Connecticut and the District of Columbia, before moving to Maryland. At the time of the trial he had a contract to install sewers for the Washington Suburban Sanitary Commission.

On September 17, 1954, the chancellor entered a decree granting complainant a divorce *a vinculo matrimonii,* ordering defendant to pay complainant permanent alimony at the rate of $50 per week and complainant's solicitor an additional counsel fee of $200.

*First.* Complainant attacked the decree because it failed to make any division of defendant's personal property. It is an accepted doctrine in both England and America that a court of equity in dissolving a marriage cannot divide the property of the spouses except by statutory authority. In England the original Divorce Act authorized the court, on dissolving a marriage on the ground of the wife's adultery, to order a settlement of her property "for the benefit of the innocent party, and of the children of the marriage, or either or any of them." 20 & 21 Vict., c. 85, sec. 45, supplemented by 23 & 24 Vict., c. 144, sec. 6. Another Act provided that after a decree of nullity of marriage or dissolution, the court may make such orders as it deems fit for the application of the property settled "either for the benefit of

the children of the marriage or of their respective parents." 22 & 23 Vict., c. 61, sec. 5.

In some States the courts have been given statutory authority to make a division or equitable distribution of the property of the parties to a divorce proceeding. *McLean v. McLean,* 69 N. D. 665, 290 N. W. 913; *Fargo v. Fargo,* 47 S. D. 289, 198 N. W. 355; *Wigton v. Wigton,* 73 Colo. 337, 216 P. 1055; *Walls v. Walls,* 179 Wash. 440, 38 P. 2d 205. In Arkansas, for example, the Legislature provided that a wife who obtains a divorce is entitled to a one-third interest in her husband's personal property and a life estate in one-third of his real property. The Arkansas Supreme Court has held that the statute providing for division or disposition of the property of the parties to a divorce is mandatory, and hence requires the court to pass a decree determining their property rights. *Parrish v. Parrish,* 195 Ark. 766, 114 S. W. 2d 29; *Coltharp v. Coltharp,* 218 Ark. 215, 235 S. W. 2d 884; *Hewitt v. Morgan,* 220 Ark. 123, 246 S. W. 2d 423.

The Maryland Court of Appeals has repeatedly stated the general rule that in divorce proceedings a court of equity has no power, unless conferred by statute, to transfer the property of either spouse to the other, or otherwise dispose of it. *Hall v. Hall,* 180 Md. 353, 355, 24 A. 2d 415; *Dougherty v. Dougherty,* 187 Md. 21, 32, 48 A. 2d 451; *Gunter v. Gunter,* 187 Md. 228, 232, 49 A. 2d 454; *Brown v. Brown,* 199 Md. 585, 591, 87 A. 2d 626; *Hull v. Hull,* 201 Md. 225, 232, 93 A. 2d 536; *Schwartzman v. Schwartzman,* 204 Md. 125, 134, 102 A. 2d 810; *Brown v. Brown,* 204 Md. 197, 210, 103 'A. 2d 856.

For more than a century the only statutory authority a court of equity had in Maryland to award any property in decreeing a divorce was to award to the wife "such property or estate as she had when married, or the value of the same, or of such part thereof as may have been sold or converted by the husband, having regard to the circumstances of the husband at the time of the divorce, or such part of any such property as the

court may deem reasonable." Laws 1841, ch. 262; Laws 1872, ch. 272, Laws 1920, ch. 574, Code 1951, art. 16, sec. 34.

In 1947 the Maryland Legislature conferred upon each court of equity in granting a divorce the power to decide any question between the parties in connection with the ownership of the personal property and to divide such property between them. Laws 1947, ch. 220, Code 1951, art. 16, sec. 38.

This Act, upon which complainant relied, reads as follows:

> "Whenever a Court shall grant a divorce a mensa et thoro or a divorce a vinculo matrimonii, it shall have the power to hear and determine all questions which may arise between the parties to such proceeding in connection with the ownership of personal property (except chattels real) held, possessed or claimed by either or both of them, and shall have the power to make a division of such property between them, or order a sale thereof and a division of the proceeds of such sale, or make such other disposition thereof as the Court may deem proper."

Complainant argued that this Act should be construed liberally so as to give adequate relief to a wife who has been innocent and whose husband has been guilty of adultery. It is true that there have been persuasive appeals in this country for legislation authorizing a division of the husband's estate when the wife is granted a divorce. For example, in 2 *Bishop, Marriage, Divorce and Separation,* sec. 1129, the author makes the following statement strongly advocating equitable division of property on the dissolution of a marriage:

> "It appears to be the doctrine of some of the cases that the common-law rule in nullity of marriage, by which the parties respectively receive back what went into the common fund, should govern this division; namely, that they

should be placed as nearly as may be in the pecuniary positions they occupied before marriage. But this rule, applied to this divorce, is contrary to the reasonings of the law; for it puts innocence and guilt on one level, gives no damage for wrong inflicted, and affords no restraint against breaches of matrimonial duty. And to send away an injured wife with simply what she brought to her husband, or with it and a further sum merely in compensation for her services rendered since the marriage,—with nothing for her mental sufferings, nothing for her blasted prospects in life, nothing for the sacrifice of her virginity and early bloom to brutality or lust,—could hardly be deemed ordinary, much less judicial justice."

However, Section 38 of Article 16, as enacted by the Legislature in 1947, goes no further than to empower a court of equity, in decreeing a divorce, to determine the ownership of the personal property of the parties and to apportion the property accordingly. In 1949 the Court of Appeals in *Hahn v. Hahn,* 192 Md. 561, 570, 64 A. 2d 739, gave effect to a property settlement in connection with the grant of a divorce.

In the Court below there was some dispute as to the interest of Helen Cammarata Lopez in the personal property used by defendant in his business. It was claimed that this second wife and defendant were partners in the business. On the contrary, complainant asserted that there was no convincing evidence that the second wife had any interest in the property. Of course, the second wife is not a party to this proceeding. In any event, complainant conceded that she did not contribute any money whatever toward the purchase of the property.

Complainant made the argument that she was entitled to a part of her husband's property because she had enabled him to acquire it by refraining from taking any legal action against him during a period of 17 years.

The chancellor rejected that argument with the following explanation:

> "I think it is apparent that this man has two wives, one more than the good custom allows.
>
> "It is also apparent that Mrs. Helen Cammarata Lopez has contributed to the establishment of this business. She regards herself as a co-owner and works in the business. He put in originally about $500 and she contributed about $2,000 of her $3,000 to the acquisition of a home and put the other $1,000 into the business.
>
> "It is a little far-fetched to say that Mrs. Soledad Lopez has contributed to the establishment of this business by her failure to receive support from her husband. She did not contribute anything in the way of a financial sum and her forbearance back there in 1937, or whenever it was, puts her in the position of not having taken any steps to make her husband support her. She ought not now come into this Court and say, under the doctrine of laches, that she wants to be cut in on the present value of this business, based upon what she might have accumulated when the business was established."

We agree that complainant cannot be regarded as a part owner of the property used by defendant in his business. While the Legislature has conferred upon each court of equity in the State the power to determine the ownership of personal property upon granting a divorce, the court obviously cannot make an adjustment of property rights where the wife never contributed anything toward the purchase of the husband's property. *Tremper v. Tremper,* 39 Cal. App. 62, 177 P. 868; 2 *Schouler, Marriage, Divorce and Separation,* 6th Ed., sec. 1868.

Complainant insisted that she should be given a part of defendant's property because he was an "obvious

bigamist," and that such a man should not fare any better in a divorce proceeding than in a criminal proceeding. The Maryland Bigamy Act, Code 1951, art. 27, sec. 20, provides that any person convicted of the crime of bigamy shall be punished by imprisonment in the Maryland Penitentiary for a period of not less than 18 months nor more than 9 years, and further provides:

"* * * and if such offender be a man, his first wife shall, on his conviction, be forthwith endowed of one-third part of his real estate, which she shall hold as tenant in dower, the assignment of which shall be made as prescribed by law in other cases of dower, and she shall have the like remedy for the recovery thereof; and she shall also, on his conviction, be forthwith entitled to one-third part of his personal estate, in the same manner as if such husband had died intestate, and she had survived him, which third part shall be divided and allotted to her in the same manner as distribution is made of the personal estate of intestates; and if the said offender be a man, he shall, on conviction, forfeit his claim or title as tenant by the courtesy, and also all his claim or title to any estate, real, personal or mixed, which he may have in right of his first wife; * * *."

This provision for the benefit of the wife is a part of the penalty for the crime of bigamy. But we have here no appeal from a conviction in a criminal prosecution. We have before us only an appeal from a decree entered by a court of equity in a divorce proceeding. It is obvious that a court of equity cannot impose the penalty which the Criminal Code authorizes to be imposed upon a person who has been convicted of the crime of bigamy.

*Second.* Complainant contended that, even though the chancellor had no power to give her a portion of defendant's property, he should at least have awarded her more than $50 per week as permanent alimony. She claimed that this amount is inadequate for her needs. In

determining an award of alimony in a suit for divorce, the court has no precise rule or standard formula. The ability of the husband to provide support and the wife's need for it are controlling factors. The amount to be allowed is governed by all the circumstances of the case and is in the sound discretion of the chancellor. The Court of Appeals has the right to review the amount of alimony allowed, but the award should not be disturbed unless the chancellor's discretion was arbitrarily used or his judgment was clearly wrong. *Westphal v. Westphal*, 132 Md. 330, 334, 103 A. 846; *Mariani v. Mariani*, 189 Md. 283, 289, 55 A. 2d 713; *Brown v. Brown*, 204 Md. 197, 206, 103 A. 2d 856.

Defendant declared that complainant has been getting along fairly well on the alimony payments of $50 per week, and that, after helping her son to pay household expenses, she had opened a savings account in bank. He argued that the chancellor decided that $50 per week was a reasonable amount after he had considered all the evidence in the case.

Of course, if it is found from more complete records that defendant's income warrants a larger allowance of alimony, the amount can be increased. An alimony decree is open to revision from time to time as the circumstances, needs, and financial conditions of the parties change. *Knabe v. Knabe,* 176 Md. 606, 616, 6 A. 2d 366, 124 A. L. R. 1317; *Winkel v. Winkel,* 178 Md. 489, 499, 15 A. 2d 914, 918; *Brown v. Brown,* 204 Md. 197, 209, 103 A. 2d 856.

As the evidence is not sufficiently complete and convincing to show that defendant is able to pay a larger amount of alimony and as the award of $50 per week is "pending further order of the Court," we will affirm this part of the decree.

*Third.* Complainant contended that the counsel fees allowed her solicitor were not adequate for the amount of legal services performed. In determining the amount of the counsel fee to be paid by the husband to the wife's solicitor, the court should take into consideration the

financial circumstances of the parties, and determine the amount in accordance with the wife's necessities and the husband's financial ability, and allow an amount that will afford the wife an efficient presentation of her side of the controversy. As in the case of alimony, the amount of the award is within the discretion of the chancellor and, while his discretion is subject to review by the Court of Appeals, the award should not be disturbed unless his discretion was exercised arbitrarily or his judgment was clearly wrong. *Bennett v. Bennett*, 197 Md. 408, 416, 79 A. 2d 513.

In this case the chancellor allowed complainant's counsel an initial fee of $100 in May, 1954, and an additional fee of $200 in the decree passed in September, 1954. A fee of $200 was subsequently allowed counsel for legal services on appeal. As complainant failed to show that these awards were so inadequate as to show an abuse of discretion, they will not be increased.

*Decree affirmed, the costs to be paid by appellee.*