## GEBHARD v. GEBHARD

[No. 154, September Term, 1968.]

*Decided April 7, 1969.*

126

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, FINAN and SMITH, JJ.

*Robert S. Bourbon* for appellant.

*Arthur Dale Leach,* with whom were *Sorrell, Paulson, Leach & Wilkinson, W. Byron Sorrell, Richard S. Paulson* and *George A. Wilkinson, Jr.,* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

The Circuit Court for Montgomery County granted the appellee (wife) a divorce *a vinculo matrimonii* from the appellant (husband). The husband appeals from that portion of the decree granting the wife one-third of certain stocks or bonds, all of the household furnishings and $525.00 per month alimony. The matter of household furnishings is now moot and is not pressed on appeal. We shall modify the alimony award and reverse that portion of the decree dealing with the securities.

The parties were married in Texas. They resided there for a number of years prior to moving to Maryland in 1965. The wife in her bill of complaint prayed "that the property rights between the parties be settled and determined".

There were stocks with a total value as of January 9, 1968, of $42,198.62 registered in the name of the husband as follows:

| | | |
|---|---|---|
| Standard Oil of Calif. | 60 shares | $ 3,780.00 |
| Texaco, Inc. | 53 " | 4,418.875 |
| Tennessee Gas Transmission Co. (Tennaco) | 202 " | 5,706.50 |
| Potomac Electric Power Co. | 418 " | 7,942.00 |
| Wellington Fund, Inc. | 1222 " | 15,886.00 |
| Wash. Water Power Co. | 50 " | 1,175.00 |
| Cities Service Co. | 6 " | 291.75 |
| Niagara Mohawk Power Co. | 30 " | 667.50 |
| American Tel. & Tel. Co. | 42 " | 2,331.00 |
| TOTAL | | $42,198.62 |

The wife claimed them to be joint property. The trial judge said:

"The wife was a complete homemaker to the point of doing all washing and ironing and all housework for the entire period of the marriage and, in addition, kept books and handled the home office of the husband. The accumulation of this personal property was in part from inheritance by the husband and in part from income to which the wife contributed both as homemaker and hostess, and as his secretary. The Court feels that she should, therefore, be entitled to one-third of said stocks, or their equivalent in cash on the current market. Real estate, both in Texas and in Virginia is also involved, but the Court has no authority to make any finding or distribution except as to ownership of personal property. (Art. 16, Sec. 29, Annotated Code of Maryland)."

The wife admits that she owned no property when she came to the marriage. She has not been employed during the mar-

riage except in helping the husband in his employment. She does not claim that she made any cash contribution toward the purchase of the stocks. The husband testified that of the stocks above listed Standard Oil of California and Cities Service Co. were owned prior to marriage, Tennessee Gas Transmission Company was bought with money left to him by his father, and Potomac Electric Power Company, Wellington Fund, Inc., and A. T. & T. were gifts from his mother. The wife does not dispute this. In response to one question as to what assets she brought to the marriage she replied, "I brought myself." She was then asked if she brought any money or stocks and replied in the negative. She admitted that the stocks were registered in the name of the husband but states that she "thought there was community property on stocks."

## I.

The wife urges upon us that since, as is admitted, the stocks were acquired while the parties resided in Texas that Texas law is applicable and under the community property law of that state she would have certain rights in the stocks. She served no notice, however, of reliance on Texas law. At oral argument the wife urged that since the husband had served notice of reliance on Texas law that this was sufficient. The husband's notice, however, was solely related to a provision of Texas law pertaining to remarriage after divorce.

In the absence of notice of intent to rely on foreign law pursuant to Code (1965 Repl. Vol.) Art. 35, §§ 47 to 53 or waiver of that requirement, the court was not required to notice judicially the law of Texas (nor are we, Maryland Rule 885), other than to presume it is like that of Maryland. *Parkside Terrace Apartments, Inc. v. Lindner*, 252 Md. 271, 249 A. 2d 717 (1969) ; *Leatherbury v. Leatherbury*, 233 Md. 344, 348, 196 A. 2d 883 (1964) ; *Hogan v. Q. T. Corporation*, 230 Md. 69, 73-74, 185 A. 2d 491 (1962) ; *Alexander v. Hergenroeder*, 215 Md. 326, 330, 138 A. 2d 366 (1958).

The law is well established in this state that, as was said by Chief Judge Brune for this Court in *Brucker v. Benson*, 209 Md. 247, 121 A. 2d 230 (1956) :

"An equity court in this State, when sitting as a divorce court, does not sit in the exercise of its ordinary chancery jurisdiction and 'has no power, unless conferred by the Legislature, to transfer the property of either spouse to the other, or otherwise to dispose of it.' *Dougherty v. Dougherty,* 187 Md. 21, 32, 48 A. 2d 451; *Schwartzman v. Schwartzman,* 204 Md. 125, 102 A. 2d 810; *Lopez v. Lopez,* 206 Md. 509, 112 A. 2d 466." *Id.* at 250.

The jurisdiction of the trial court comes from Code (1966 Repl. Vol.) Art. 16, §§ 25 and 29. Section 25 provides in pertinent part:

"* * * in all cases where a divorce is decreed, the court passing the same shall have full power to award to the wife such property or estate as she had when married, or the value of the same, or of such part thereof as may have been sold or converted by the husband, having regard to the circumstances of the husband at the time of the divorce, or such part of any such property as the court may deem reasonable * * *."

Section 29 provides in pertinent part:

"Whenever a court shall grant a * * * divorce a vinculo matrimonii, it shall have the power to hear and determine all questions which may arise between the parties to such proceeding in connection with the ownership of personal property (except chattels real) held, possessed or claimed by either or both of them, and shall have the power to make a division of such property between them, or order a sale thereof and a division of the proceeds of such sale, or make such other disposition thereof as the court may deem proper."

Comment on the latter section was made in *Lopez v. Lopez,* 206 Md. 509, 112 A. 2d 466 (1955) by Judge Delaplaine:

"However, Section 38 of Article 16 [now Section 29], as enacted by the Legislature in 1947, goes no

further than to empower a court of equity, in decreeing a divorce, to determine the ownership of the personal property of the parties and to apportion the property accordingly." *Id.* at 517.

In *Lopez, supra,* the wife claimed part of the personal property to which she had not contributed. She contended that since the husband was a bigamist, therefore obviously guilty of adultery, she was entitled to part of her husband's property because she had enabled him to acquire it by refraining from taking any legal action against him during a period of 17 years. This Court said:

> "We agree that complainant cannot be regarded as a part owner of the property used by defendant in his business. While the Legislature has conferred upon each court of equity in the State the power to determine the ownership of personal property upon granting a divorce, *the court obviously cannot make an adjustment of property rights where the wife never contributed anything toward the purchase of the husband's property."* (citing authorities) *Id.* at 518. (emphasis added)

On the evidence of this case there is no basis for a conclusion other than that title to these securities was in the registered owner, the husband. See *Brewster v. Brewster,* 207 Md. 193, 202, 114 A. 2d 53 (1955) and *Newmeyer v. Newmeyer,* 216 Md. 431, 435, 140 A. 2d 892 (1958). There was not the slightest evidence of ownership by the wife, other than the community property theory urged by her, upon which the chancellor could determine ownership or require a division under Art. 16, § 29. There was no evidence upon which an award could be made under § 25, since the wife brought no property or estate to the marriage. No authority exists for a division between parties as was here done because of the work efforts of the parties. There being no legal basis upon which the chancellor could award a part of the securities to the wife, his action was clearly erroneous.

## II.

The husband contends earnestly that the chancellor erred in awarding alimony of $525.00 per month, pointing out that his income for 1968 was estimated at $11,500.00 and that this alimony award amounted to approximately 54% of his gross income. The wife contends with equal earnestness that the award was entirely proper and just, calling attention to the fact that she is suffering from an incurable disease, that she is incapable of carrying on an active work program, that she is under continual medical care, that her condition is subject to aggravation by tensions caused by matters such as the law suit and that her medical bills amounted to approximately $3000.00 in the year before trial. She submitted what she called "an austere budget" and claims that the court's allowance of $525.00 forces a "drastic curtailment of even that austere budget".

The parties must bear in mind that an alimony decree is open to revision from time to time as the circumstances, needs and financial conditions of the parties change. *Lopez, supra,* at p. 520, and cases there cited. They must also bear in mind the unfortunate fact of life that two people cannot live apart as inexpensively as they can live together. The innocent wife is entitled to alimony, but the guilty husband is also entitled to live.

In *Newmeyer v. Newmeyer, supra,* this Court stated:

> "[I]n reviewing the award of alimony by the chancellor, * * * the factors to be considered [are] the husband's wealth and earning capacity, the station in life of the parties, their physical condition and ability to work, the length of time they have lived together, the circumstances leading up to the divorce and the fault that destroyed the home * * *." (citing authorities) *Id.* at 434.

The above comment in *Newmeyer* was quoted verbatim in *Schuman v. Schuman,* 252 Md. 13, 17, 248 A. 2d 876 (1969) in which case we also quoted, with approval, *Donigan v. Donigan,* 208 Md. 511, 119 A. 2d 430 (1956) wherein Judge (now Chief Judge) Hammond said for this Court:

> "The award of alimony generally is a question of judg-

ment on facts not in dispute and it is peculiarly the kind of determination which an appellate court feels freer to make than it does in matters which depend upon credibility, where the appearance and demeanor of the witnesses are important and the determination of disputed facts controls the case. Undoubtedly, this is the reason why this Court sometimes has changed the award of alimony, without expressly saying (as necessarily was implicit in the decision) that the chancellor was clearly wrong." *Id.* at 521.

We believe alimony in the amount of $400.00 per month would be proper and more in keeping with the standards laid down in *Newmeyer, supra*. This sum is more than is normally awarded on an income of the husband of $11,500.00. It takes into consideration the medical expenses of the wife. As previously observed, alimony awards are subject to revision as circumstances change.

*So much of decree awarding part of appellant's securities to appellee reversed; so much of decree awarding alimony modified, and as so modified, affirmed; costs to be paid by appellant.*