## GARNER *v.* GARNER

[No. 334, September Term, 1969.]

*Decided May 6, 1970.*

724

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SMITH and DIGGES, JJ.

*Richard C. Murray* for appellant.

*Walter R. Tabler* for appellee.

SMITH, J., delivered the opinion of the Court.

We are here concerned with the voluntariness of a separation and its corroboration. Appellee, Welford E. Garner, sued his wife, appellant, Virginia F. Garner, for divorce *a vinculo matrimonii* on the ground of voluntary separation. The wife countered with a cross-bill on the ground of desertion. The chancellor (Maguire, J.) granted the husband a divorce and dismissed the cross-bill. The wife attacks the sufficiency of the evidence as to the voluntary separation and also appeals the alimony award. We shall affirm the chancellor on both counts.

The parties were married in 1946. Apparently difficulties ensued a long time ago. They separated in December of 1958. A formal separation agreement was entered into. A reconciliation was effected in January of 1960. They separated in the fall of 1962. There was a written separation agreement in October of 1963. The parties were reconciled in November of 1966. The husband says they separated in January of 1967. The wife doesn't deny that they ceased living together at that time, but says the husband left her.

We must approach this case under the admonition of Maryland 886 a that "the judgment of the lower court will not be set aside on the evidence unless clearly erroneous and due regard will be given to the opportunity of the lower court to judge the credibility of the witnesses." The husband testified that the parties were rec-

onciled in November of 1966, that it became apparent on the third day of the reconciliation that it was not working, that "[a]s the result of some very aggravated situations [they] * * * agree[d] in early December that [they] couldn't go on as [they] were and [they] would separate", and that "[t]he time was set for when [the husband] left for military life, which was in January. [They] agreed that [they] would not separate until after the holidays, because of the children and all the other conditions that prevailed around the holidays."

The testimony of the wife of a brother of Mrs. Garner was presented. Mrs. Garner lived with her brother and his wife from June or July of 1967 until January of 1968. The sister-in-law testified:

> "[Mrs. Garner] told me that they had agreed that once when [Mr. Garner] went on Navy duty, if they agreed that they did not get along, that he would not move back into the house again."

At another point she said:

> "The only thing that I remember is that she told me that [Mr. Garner] was going on a cruise for the Navy and that if they decided they weren't getting along together, he just would not come back in the house."

At another point the record is as follows:

> "(The Court) : Your testimony is that — you are aware of the fact from the testimony today that they separated on January 14, 1967 and apparently that was the day or the day before that the husband went on active duty with the Naval Reserve for a period of two weeks? A. Right.
>
> "(The Court) : You testified before this Court that you have had conversations with the wife sometime in October or November of the year before, 1966? A. That's right. I remember because she stated that they weren't getting along.

There was no communication between them, that she would be either out in the kitchen doing work or he reading the paper or watching television and they weren't hitting it off.

"(The Court) : Your testimony is that, at that time, you discussed with her, she advised you of her plans that if they couldn't get along — correct me if I am wrong—and after the holidays, when he was going to be on Naval Reserve, they would separate? A. That's correct.

"(The Court) : Is that the way you understood it? A. Yes.

"Q. How often did you hear it from the first time you heard it to the actual separation in January, 1967? A. Around two times.

"(The Court) : With discussions between you and Mrs. Garner? A. Yes."

There was other testimony from the sister-in-law indicating that there were conversations to like effect after the separation took place.

The wife points a finger at the sister-in-law and indicates that disagreements had arisen between them, there actually having been some litigation. The fact remains, however, that the sister-in-law's testimony did corroborate that of the husband.

Judge McWilliams discussed for the Court the elements of voluntary separation in the recent case of *Smith v. Smith*, 257 Md. 263, 262 A. 2d 762 (1970), saying:

"We have held that the requirements for a divorce a vinculo on the ground of voluntary separation are threefold. There must be an express or an implied mutual agreement between the parties to separate accompanied by a mutual intent not to resume the marriage relationship. *E.g., Wilner v. Wilner*, 251 Md. 13, 24 (1968), and the cases therein cited; *Sullivan v. Sullivan*, 234 Md. 67, 72 (1964). The parties must voluntarily have lived separate and apart without

cohabitation for at least 18 consecutive months. *See Hamilton v. Hamilton,* 242 Md. 240, 245 (1966) (dictum) ; and *Lillis v. Lillis,* 235 Md. 490 (1964). Proof that the separation is beyond any reasonable hope of reconciliation is the third requirement.

"That *every* element *must* be corroborated is well settled. Code, Art. 35, § 4 *as amended* (1969 Cum. Supp.) ; *see Fuller v. Fuller,* 249 Md. 28 (1968) ; and *Smith v. Smith,* 225 Md. 282 (1961). However, in a contested divorce case where there is no basis for inferring collusion the corroboration need only be slight. *E.g., Stewart v. Stewart,* 256 Md. 272, 260 A. 2d 71 (1969)." *Id.* at 266. (emphasis in original)

Approaching the criteria there set forth in inverse order, there was no contention whatever that the separation here was not "beyond any reasonable hope of reconciliation" nor was there any contention that the parties had not "lived separate and apart without cohabitation for at least 18 consecutive months". There was ample corroboration on these points. The only contested point was the matter of "an express or an implied mutual agreement between the parties to separate accompanied by a mutual intent not to resume the marriage relationship." The testimony here, if believed by the chancellor, was ample to satisfy this point. It was believed. Therefore, under Maryland Rule 886 a, we may not set aside the chancellor's finding.

At the time of the passage of the decree Mrs. Garner was a patient at a mental institution. Provision was being made at that time by the husband for those expenses. Were it not for the $310.00 per month the husband was there paying for her, the allowance of alimony of $85.00 per week when the husband's net income was $17,786.00 per year would appear a little on the light side. The decree must be considered, however, in the light of the circumstances prevailing at that time and not in the light of the circumstances now prevailing when we are advised

the wife is no longer a patient at such an institution. Alimony awards are subject to revision as circumstances change. *Gebhard v. Gebhard,* 253 Md. 125, 131, 252 A. 2d 171 (1969); and *Lopez v. Lopez,* 206 Md. 509, 520, 112 A. 2d 466 (1955). As Judge Delaplaine said for the Court in *Lopez* at page 520, "[T]he [alimony] award should not be disturbed unless the chancellor's discretion was arbitrarily used or his judgment was clearly wrong. *Westphal v. Westphal,* 132 Md. 330, 334, 103 A. 846; *Mariani v. Mariani,* 189 Md. 283, 289, 55 A. 2d 713; *Brown v. Brown,* 204 Md. 197, 206, 103 A. 2d 856." We cannot say in this instance that the chancellor's discretion was arbitrarily used or his judgment was clearly wrong based upon the circumstances existing at the time the decree was passed.

*Decree affirmed; appellee to pay the costs.*