LUCIE ANN ABELL *v.* J. FRANK ABELL

[No. 309, September Term, 1970.]

*Decided May 28, 1971.*

The cause was argued before MORTON, ORTH and POWERS, JJ.

*Eugene E. Pitrof* for appellant.

*Oliver R. Guyther* for appellee.

MORTON, J., delivered the opinion of the Court.

Under date of December 9, 1969, the Chancellor below signed a decree in which the wife, Lucie Ann Abell, appellant here, was awarded a divorce *a vinculo matrimonii* from her husband, J. Frank Abell, and given custody of two minor daughters with reasonable rights of visitation awarded to the husband. It was further decreed therein that the husband should provide reasonable support for the daughters "and that the matter of alimony and support, the question of counsel fees, court costs, as well as the division of personal property jointly owned by the parties to this cause be held in abeyance for further determination by this Court." Thereafter, on April 7, 1970, the Chancellor signed an order, accompanied by an opinion, providing for a division of the personal property of the parties and support for the two daughters. He did not award alimony to the wife or require the husband to pay her attorney's fees.

According to the findings of the Chancellor, the parties had been married approximately 32 years and had

four daughters, two of whom were married and two of whom were 19 and 20 years of age, respectively, unmarried, and attending St. Mary's College of Maryland at the time of the hearing below. The husband entered the "slot machine business upon their legalization and through the years had accumulated substantial property and a comfortable living for himself and his family. In June, 1968, the slot machines were outlawed and the financial success of the defendant waned and declined with their demise. Problems and difficulties in the marriage occurred prior to and after the outlawing of these machines."

As a result of his business activities, the husband accumulated a substantial number of commercial enterprises and properties, largely tavern and restaurant facilities, had substantial holdings of corporate stocks and bonds and owned a number of race horses. According to a statement filed by him in the proceedings below, he had a net worth as of June 30, 1969, of approximately $300,000, based upon the following assets: coin machines valued at $15,000; automobiles and trucks valued at $8,000; stocks and bonds valued at $43,145.10; notes and mortgages receivable in the amount of $43,286.27; land, buildings and equipment valued at $209,511.63; and horses and equipment valued at $10,856.54. His total liabilities, according to the net worth statement, amounted to $50,554.63.

At the time of the hearing below the wife had a savings account in the amount of $28,598.89; "cash on hand in excess of $20,000"; cash in two bank accounts in the amount of approximately $1,300 and shares of a bank stock valued at $12,100.

It was conceded that all of the husband's assets, both real and personal were jointly owned by the husband and wife, or intended to be jointly owned, with the exception of a $13,000 savings account in the husband's name, alone, which had been pledged to secure a $20,000 business loan.

The Chancellor ordered an equal division between the

parties of the stocks and bonds listed in the husband's net worth statement at a value of $43,145.10, and the notes and mortgages payable to the parties which, according to the statement, were valued at $43,286.27. He awarded to the wife a 1967 Cadillac automobile and the furniture, fixtures and furnishings in the home of the parties which was occupied solely by the wife and the unmarried daughters—the husband living in an apartment over one of the restaurants owned by the parties.

The coin machines, trucks and horses were awarded to the husband. He was required to designate the wife as a one-third beneficiary in existing insurance policies on his life, the four children were to be designated as two-thirds beneficiaries and the husband was required to continue to pay the premiums. He was also required to pay the undergraduate college expenses for the two unmarried daughters, their medical and dental expenses, and each daughter was to receive a clothing allowance of $16.65 per week, $5.00 per week for spending money and $2.00 per day as a food allowance when living at home with the wife.

Among the contentions advanced by the wife in this appeal is the complaint that the division of the personal property by the Chancellor was "totally inequitable." It is asserted that "the appellant acknowledges that such a division is within the sound judicial discretion of the Chancellor, but we contend that the Chancellor abused his discretion in this regard."

Section 29 of Article 16, Md. Code, provides:

> "Whenever a court shall grant a divorce a mensa et thoro or a divorce a vinculo matrimonii, it shall have the power to hear and determine all questions which may arise between the parties to such proceeding in connection with the ownership of personal property (except chattels real) held, possessed or claimed by either or both of them, and shall have the power to make a division of such property between

them, or order a sale thereof and a division of the proceeds of such sale, or make such other disposition thereof as the court may deem proper. (An. Code, 1951, § 38; 1947, ch. 220.)."

The Court of Appeals in *Lopez v. Lopez*, 206 Md. 509, had occasion to construe this statute and in approving the refusal of the Chancellor to award to the wife a part of the husband's personal property, stated, at 517:

"However, Section 38 [now § 29] of Article 16, as enacted by the Legislature in 1947, goes no further than to empower a court of equity, in decreeing a divorce, to determine the ownership of the personal property of the parties and to apportion the property accordingly."

In the course of his opinion, the Chancellor below stated: "Defendant has throughout the proceeding stated and reiterated that, except for a $13,000 savings account pledged as security for a bank loan, half of what he owns belongs to his wife, the complainant herein. After considering the recommendations of the parties and defendant's express intention as to the joint ownership of the property, this court has reached the following allocation of the personal property."

That the Chancellor in making the allocation was of the opinion that he had discretionary authority under § 29 to make division and distribution of the jointly owned property as he deemed to be fair and reasonable, without respect to ownership, is clear for, after citing the statute, he stated that "the court believes that in view of the overall division of the property, the allocation is fair and equitable." The statute, however, does not give discretion to a court of equity, sitting as a divorce court, to award the property of one spouse to the other. Any doubt in this respect is resolved by the Court of Appeals recent holding in *Gebhard v. Gebhard*, 253 Md. 125, where *Lopez* was quoted with approval and the Court held that the Chancellor there had erred in awarding to the wife a

part of the securities which were owned solely by the husband.

As stated in Gebhard, at 128-129:

> "The law is well established in this state that, as was said by Chief Judge Brune for this Court in *Brucker v. Benson,* 209 Md. 247, 121 A. 2d 230 (1956):
>
>> 'An equity court in this State, when sitting as a divorce court, does not sit in the exercise of its ordinary chancery jurisdiction and 'has no power, unless conferred by the Legislature, to transfer the property of either spouse to the other, or otherwise to dispose of it.' *Dougherty v. Dougherty,* 187 Md. 21, 32, 48 A. 2d 451; *Schwartzman v. Schwartzman,* 204 Md. 125, 102 A. 2d 810; *Lopez v. Lopez,* 206 Md. 509, 112 A. 2d 466.' *Id.* at 250."

We are unaware of any legislative authority empowering our courts of equity, when sitting as divorce courts, to transfer the property of one spouse to the other or otherwise to dispose of it.[1] Thus, having found that the personal property was owned equally by the parties, the Chancellor was powerless to do anything more under the terms of § 29 than to make an equal division between the parties of the jointly owned property or, in the alternative, to order a sale of the property or such part thereof deemed necessary to effectuate an equal division, and to order the proceeds of sale to be equally divided between the parties.

Here, it is apparent that the Chancellor adhered to the provisions of the statute in awarding an equal division of the stocks and bonds and the notes and mortgages. It is equally apparent, however, that he exceeded the authority conferred upon him by § 29 when he ordered an unequal distribution of the balance of the jointly owned property by awarding to the husband, to the exclusion

---

1. See *Joyce v. Joyce,* 10 Md. App. 516.

of the wife, all the coin machines, trucks and horses. This, of course, had the effect of awarding to one spouse the property of the other spouse and this the Chancellor lacked the power to order.

Accordingly, the case will be remanded for the Chancellor to reconsider the allocation of the personal property of the parties and to revise his order of April 17, 1970, to comport with the authority he has under the present state of the law.

Since the husband has made no complaint concerning the allocation to the wife of the household furnishings and the automobile, we have no occasion to consider the legal competency of this award. Upon remand, however, and in the absence of any agreement between the parties, the allocation of these properties should be made in accordance with the applicable law as set forth herein.

It is next contended that the Chancellor erred in not awarding alimony to the wife. In explaining his decision to withhold the award of alimony, the Chancellor referred to the wife's contention that her total weekly expenses were $190 and found that "in this total are several items which this court has determined to be support for Sarah and Faye [children of the parties] which is the obligation of the defendant." The Chancellor found that these expenditures, which he required the husband to pay, reduced the wife's total weekly expenses to $118.70.

As counsel for the wife concedes in his brief, the awarding of alimony is largely in the discretion of the Chancellor. Over two decades ago the Court of Appeals of Maryland stated that "in making such an award, the Court can only use judicial discretion. Of course, there is no special statute or rule governing this discretion. It must be exercised to the necessary end of awarding justice and based upon reason and law." *Waters v. Waters,* 191 Md. 436, 441. As Judge William J. McWilliams recently pointed out: "What we said in *Waters v. Waters* * * * has been repeated and paraphrased in most of the cases which followed." *Burton v. Burton,* 253 Md. 233, 236.

In making his determination with respect to alimony, the Chancellor must, of course, as he did here, take into consideration the statutory mandate contained in Md. Code, Art. 16, § 5 (a), which provides: "In all cases where alimony or alimony pendente lite and counsel fees are claimed, the court shall not award such alimony or counsel fees unless it shall appear from the evidence that the wife's income is insufficient to care for her needs."

After referring to the statute, the Chancellor specifically concluded that "it does not appear to the Court that the complainant's income and assets are insufficient to care for her needs." While it is true that the wife's only apparent income was interest from her savings account, it is also clear that she has access to substantial cash assets of her own and that she has an undivided one-half interest in the personal property of the parties as well as in the real estate which, according to the husband's net worth statement, had an undepreciated value of over $367,000. On the other hand, although the assets of the husband appear to be substantial, there was testimony by his bookkeeper, according to the Chancellor below, that he "is operating at a loss both personally and in his business."

It is clear from the opinion of the Chancellor that in making his determination to withhold alimony to the wife, he considered all the factors that the Court of Appeals has enunciated over the years as guidelines to be adhered to in making such determination and from our review of the entire record, we cannot say that there was any abuse of his judicial discretion or that his conclusion was clearly erroneous. *Bowis v. Bowis,* 259 Md. 41, *Blumenthal v. Blumenthal,* 258 Md. 534, 540-541, *Quinn v. Quinn,* 11 Md. App. 638.

The wife next contends that "the Chancellor had an obligation to reserve to the wife the right to obtain an award of alimony in the future * * *." In determining whether to reserve or not to reserve jurisdiction to award alimony in the future, the Chancellor has the same judicial discretion which encompasses his authority to award

or not to award alimony at the time of granting an absolute divorce. See *Buehler v. Buehler,* 229 Md. 317. In the exercise of such discretion, however, consideration must be given to the principle that where an absolute divorce is granted and the decree does not contain an award of alimony or a reservation of jurisdiction to award alimony at a future time, the right to alimony is forever barred. *Staub v. Staub,* 170 Md. 202; *Marshall v. Marshall,* 162 Md. 116; *Reed v. Reed,* 11 Md. App. 396; cf. *Dackman v. Dackman,* 252 Md. 331.

In the case at bar, the Chancellor gave in considerable detail his reasons for withholding an award of alimony at this time and we have found no abuse of his discretion in reaching that determination. On the other hand, we do not have the benefit of any explanation by the Chancellor concerning his intention to reserve or not to reserve jurisdiction to consider an application for alimony at some future date.

It is entirely possible that the Chancellor felt that he had reserved jurisdiction since the decree of divorce, as distinguished from the opinion and order issued some five months later, expressly provided "that the matter of alimony and support * * * be held in abeyance for future determination by this court." In view of this language in the decree of divorce, it is arguable that the Chancellor's determination some five months after the decree that alimony need not be awarded to the wife at this time, would not necessarily preclude the granting of alimony at some future date if the wife's changed financial circumstances so warranted. See *Reed v. Reed, supra.* Thus, if this interpretation prevailed, the wife's contention that she is forever barred from applying for alimony would be completely unfounded. We have not had the benefit of briefs or argument from counsel for either of the parties upon this approach to the issue. However, our remand of the case will afford the Chancellor an opportunity to review and clarify his intentions concerning the retention of jurisdiction to consider a future application by the wife for the award of alimony. Any

such review should, of course, take into account the fact that the parties had been married for 32 years; that the marriage was dissolved because of the husband's transgressions; that the 56 year old wife has had no business or professional experience, having been simply a mother and housewife during most of her married life; and that, although her assets are substantial by present day standards, there may be uncertainties which inhere in her future financial status.

For the reasons enunciated in the Chancellor's opinion below, we find no abuse of discretion in the manner in which he made provision for the support and maintenance of the minor daughters, who, we were advised at oral argument, have since become emancipated.

Finally, we cannot agree that the Chancellor abused his discretion by failing to award to the appellant the counsel fees she had previously incurred and those incurred as a result of representation by her present counsel. The Chancellor did require the husband to pay the court costs and fees of the court reporter, including reimbursement to the wife of $119.65 for costs of transcribing depositions. While we recognize that the wife has undoubtedly incurred substantial legal fees for services rendered during this extended litigation, we cannot say on the record before us that her financial status is so straitened as to require us to find that the Chancellor was clearly wrong in not awarding her counsel fees. Md. Code, Art. 16, § 5; *Brown v. Brown,* 248 Md. 139; *Lopez v. Lopez,* 206 Md. 509, 521.

> *Order reversed in part and affirmed in part and case remanded for the passage of a decree and order to conform with this opinion; appellee to pay the costs.*