654 A.2d 914

**Patricia Donnelly JENSEN**

v.

**John G. JENSEN.**

**No. 744, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

March 1, 1995.

E. Pete Summerfield (Summerfield, Willen, Silverberg & Limsky, on the brief), Owings Mills, for appellant.

Susan S. Miller (Frederick William Miller, on the brief), Baltimore, for appellee.

Argued Before DAVIS, HARRELL and HOLLANDER, JJ.

HOLLANDER, Judge.

A Petition to Reinstate Alimony (the "Petition"), filed by appellant Patricia Jensen in the Circuit Court for Baltimore County, has spawned this appeal. Appellant's Petition was based on a 1975 order reserving jurisdiction over alimony. Until 1993, Ms. Jensen never instituted any proceedings asking the court to revisit the 1975 Order. Relying on the case of *Turrisi v. Sanzaro*, 308 Md. 515, 520 A.2d 1080 (1987), the trial court rejected Ms. Jensen's Petition; the court determined that, notwithstanding the reservation, Ms. Jensen is not entitled to reinstatement of alimony payments from her exhusband, appellee John Jensen, from whom Ms. Jensen was divorced in 1970. For the reasons discussed below, we shall reverse and remand for further proceedings.

### Factual Background

The first round of proceedings in this case dates from 1969 through 1976. Unfortunately, the record, including all hearing

transcripts, is missing. But for the purposes of this appeal, the facts are essentially undisputed.

## A.   The Original Proceedings

Mr. and Ms. Jensen married on June 13, 1952. The couple had two children, born in 1961 and 1962. Mr. Jensen worked as an aircraft mechanic, a job he has held intermittently to the present time. For the first nine years of the marriage, Ms. Jensen worked as a secretary for various law firms, but ceased working upon the birth of their first child. Ms. Jensen had long suffered from various medical and emotional maladies, including epilepsy and alcoholism. In 1968, she suffered a nervous breakdown, which required brief hospitalization. Ultimately, the couple was granted a divorce on December 7, 1970.

In the Decree of Divorce, the trial court ordered, *inter alia,* that Mr. Jensen pay Ms. Jensen permanent alimony of $30 per week, and expressly provided that the award of permanent alimony, among other things, was "subject to the further order of this Court." In the following three years, the parties continued to litigate issues as to alimony arrearages, custody, and visitation. In 1972, Ms. Jensen began working as a secretary for the State of Maryland, earning an annual salary over $7,000. Mr. Jensen, meanwhile, had been earning about $11,000 annually. On August 27, 1973, Mr. Jensen filed a petition for a decrease in alimony and hearings were held on March 27, 1975 and October 1, 1975.

On October 2, 1975, after the final hearing but before the circuit court filed its written order, Ms. Jensen wrote a letter to the Chancellor, in which she said that she was "unable to understand nor accept without better explanation than [she had] been given by ... counsel the reported decision to eliminate alimony payments...." In response, the Chancellor wrote Ms. Jensen the following letter:

> By the Order which will be submitted to me for signature, and which was agreed upon in open Court several days ago,

*the question of alimony, so far as you are concerned, will be reserved.*

However, there will be no provision for alimony at the present time because of the fact that, considering support for the children, *you are making just as much if not more money than Mr. Jensen.*

(Emphasis added).[1]

On October 14, 1975, the circuit court issued an order (the "1975 Order") stating, in pertinent part, as follows:

IT IS FURTHER ORDERED that the Decree of December 7, 1970 relative to the payment of permanent alimony by the Plaintiff, John G. Jensen, unto the Defendant Patricia Donnelly Jensen, is hereby modified to the extent that said Plaintiff, John G. Jensen shall not be required to pay alimony unto the Defendant, Patricia Donnelly Jensen, said modification to be effective as of the 14th day of October, 1975, and

IT IS FURTHER ORDERED that *the right of the Defendant, Patricia Donnelly Jensen, to alimony is hereby reserved,* and

IT IS FURTHER ORDERED that *this Court shall retain jurisdiction over the parties to and the subject matters of this cause and shall pass such Orders in the future as the circumstances may then warrant.*

(Emphasis added).

In an unpublished opinion filed May 26, 1976, this Court affirmed the 1975 Order. *Jensen v. Jensen,* No. 1074 (Ct.Sp. App. May 26, 1976).

### B. The Present Proceedings

In February, 1987, Ms. Jensen fell at work and was injured. She received worker's compensation benefits but those benefits terminated after two years. Ms. Jensen claims that she

---

1. Mr. Jensen apparently lost his job in June, 1975; the period during which he remained unemployed thereafter, and how much he earned upon finding a new job, are unclear.

has been unable to continue working for the State. She avers that, since the injury, she has subsisted on disability assistance, food stamps, and less than 20 hours per week in part-time work. She applied for other Social Security benefits but did not receive a response for several years. Unable to pay her continuing medical expenses, Ms. Jensen filed for bankruptcy protection in 1992.

On February 8, 1993, seventeen years after the circuit court's 1975 Order terminating alimony, Ms. Jensen filed her Petition. She alleged a drastic change in circumstances and claimed that "she [was] no longer able to support herself."

On September 27, 1993, a hearing was held before a domestic relations master concerning the Petition. The Master declined to resolve Mr. Jensen's legal argument that Ms. Jensen was precluded, as a matter of law, from seeking alimony. Instead, the Master proceeded to the merits of the Petition and heard testimony from the parties as to their present circumstances. Mr. Jensen testified that he was then earning $35,000 annually. In stark contrast, Ms. Jensen said she received $7,560 annually, including public assistance funds. Both parties testified extensively as to their respective health problems.

On September 27, 1993, the Master filed her Findings of Fact and Recommendation. She recommended that Mr. Jensen pay $250 per month of indefinite alimony, retroactive to July, 1993, reduced by whatever amount Ms. Jensen ultimately receives from Social Security. Mr. Jensen filed exceptions, which were heard by the circuit court on November 23, 1993.

As a preliminary matter, the court limited the parties' arguments to the question of whether, notwithstanding the reservation, Ms. Jensen was precluded as a matter of law from seeking alimony seventeen years after alimony had been terminated. Both parties agreed that the Alimony Act of 1980 (the "Alimony Act"), 1980 Md.Laws 2057, does not govern the 1975 Order. Further, both parties cited *Turrisi v. Sanzaro*, 308 Md. 515, 520 A.2d 1080 (1987), as support for their respective positions. Mr. Jensen argued that *Turrisi* recog-

nized the fact that it has never been appropriate to reserve alimony based on some vague, future expectation of a change in circumstances; rather, chancellors could only reserve based on contingencies that were reasonably foreseeable and could only reinstate alimony for reasons that were foreseeable. Ms. Jensen noted that the holding of *Turrisi* specifically addressed only the issue of whether the Alimony Act had abrogated the circuit court's ability to reserve. She cited the history of the Alimony Act, as recounted in *Turrisi,* to contrast the present law of alimony with the law prior to 1980.

After the conclusion of legal argument, the Chancellor declined to allow the parties to reach the issues actually considered by the Master. The court said:

> I want to address solely, from the beginning, the issue of whether or not a reservation of seventeen years is appropriate. *If I find that it was, then I'll hear you on the other issues. But right now I want to address that issue. I'll take it sub curia on the narrow issue of whether or not you can come back after seventeen years and revive a reservation of alimony.*

(Emphasis added).

On December 20, 1993, the Chancellor issued an order granting Mr. Jensen's exceptions. The court was concerned that an award of alimony seventeen years after the 1975 Order, premised on changes in circumstances that apparently were unforeseeable in 1975, would effectively convert alimony "into a form of disability insurance." The Chancellor stated, in pertinent part:

> There is nothing to indicate the trial judge's reasons for making the reservation [in 1975]. Perhaps the Petitioner's recitation of her medical and mental problems prior to the 1975 modification and reservation contained in her current testimony before the Master persuaded the court in 1975 that, should these conditions recur, the reinstatement might be appropriate. *Assuming that is so, in the absence of any other indications for reserving alimony, that is not why Petitioner seeks reinstatement. Her compensable accident*

*in 1987, and her resulting disability were not "foreseeable" in 1975. As alluded to in Turrisi, [308 Md. at 528–29, 520 A.2d 1080], to hold otherwise would turn reserved alimony into a form of disability insurance.* ·

(Emphasis added).

### Issues Presented

Ms. Jensen presents two questions for our review:

1. "Did the Circuit Court err in finding as a matter of law that Appellant Patricia Donnelly Jensen could not seek alimony in a petition filed in 1993 and based on a reservation of jurisdiction regarding alimony in a 1975 Order?"

2. "If Appellant may seek alimony at this time, did she demonstrate her entitlement to alimony, at the hearing before the Master, sufficient to require a remand to the Circuit Court for consideration by the Court of that issue?"

Mr. Jensen contends that this case presents but a single issue: "Whether the Chancellor's judgment to deny alimony after more than 17 years under the facts of this case, after giving consideration to the Recommendations of the Master and exercising his independent judgment, was an arbitrary abuse of discretion or clearly wrong."

We hold that the circuit court erred in concluding that, as a matter of law, Ms. Jensen was not entitled to pursue her claim for alimony. The trial court erroneously found that appellant could not base her Petition on events that had occurred long after the reservation of jurisdiction and that were unforeseeable at the time of reservation.

### The Standard of Review

As a threshold matter, we note that the standard of review of the Chancellor's decision turns on the nature of his decision. If the Chancellor exercised discretion to deny alimony based on the facts of the case, then the decision ordinarily would not be disturbed unless the exercise of discretion was "arbitrarily used" or the decision was "clearly wrong." *Tra-*

*cey v. Tracey*, 328 Md. 380, 388, 614 A.2d 590 (1992); *Brodak v. Brodak*, 294 Md. 10, 28–29, 447 A.2d 847 (1982). If, on the other hand, the Chancellor limited his decision to a narrow issue of law, such as whether Ms. Jensen could revive alimony based on changes in circumstances that were unforeseeable in 1975, then the decision is not entitled to any deference. *Rohrbaugh v. Estate of Stern*, 305 Md. 443, 446 n. 2, 505 A.2d 113 (1986).

The court clearly expressed a desire to limit the decision to the "narrow issue of whether or not you can come back after seventeen years and revive a reservation of alimony." Moreover, the court refused to permit the parties to discuss the facts at the hearing and told the parties they would return to address the facts should the court find that Ms. Jensen was legally entitled to petition for alimony. From this, it is clear to us that the trial court never considered the facts found by the Master and, instead, limited his decision to the legal issue presented. We shall review his decision accordingly.

### *Discussion*

■ In the 1975 Order, the court unequivocally reserved jurisdiction as to alimony. The parties agree here, as they did below, that the 1975 Order is governed by the substantive law that was in effect prior to the enactment of the Alimony Act. Similarly, Ms. Jensen's Petition, which is based on the 1975 Order, must be analyzed and considered based on the law in effect at the time of the 1975 Order; the Alimony Act expressly affects only those cases filed after the effective date. *Young v. Young*, 61 Md.App. 103, 107–09, 484 A.2d 1054 (1984) (petition, filed in 1982, requesting modification of alimony order that had been issued prior to effective date of Alimony Act, is not governed by Alimony Act) (citing *Athanason v. Athanason*, 48 Md.App. 231, 426 A.2d 16 (1981)).

Under pre–1980 law, the authority to grant alimony was

codified at Md.Code of 1957, Art. 16, §§ 2–3 (1973).[2] Alimony was defined as "a money allowance payable under a judicial decree by a husband at stated intervals to his wife, or former wife, during their joint lives or until the remarriage of the wife, so long as they live separately, for her support and maintenance." *Simpson v. Simpson,* 18 Md.App. 626, 628, 308 A.2d 410 (1973) (citing *Knabe v. Knabe,* 176 Md. 606, 6 A.2d 366 (1939)).[3] *See generally, Thomas v. Thomas,* 294 Md. 605, 609–15, 451 A.2d 1215 (1982) (expanding on history of alimony recounted in *Thomas v. Thomas,* 48 Md.App. 255, 261–67, 426 A.2d 976 (1981)).

While the power to grant alimony was based on statute, the statute did not provide guidance as to the criteria to be used.[4] The standards by which a chancellor was to exercise discretion in awarding alimony were established judicially, rather than statutorily.[5] *Turrisi,* 308 Md. at 524, 520 A.2d 1080. In *Lopez v. Lopez,* 206 Md. 509, 520, 112 A.2d 466 (1955), the Court said:

In determining an award of alimony in a suit for divorce, the court has no precise rule or standard formula. *The ability of the husband to provide support and the wife's need for it are controlling factors.* The amount allowed is governed by all the circumstances of the case and is in the sound

---

**2.** The relevant statutes are now codified at Md.Code Ann., Fam.Law Art., Title 11 (1991).

**3.** Pursuant to 1976 Md.Laws 440 and the Equal Rights Amendment to the Maryland Constitution, alimony was made available to men.

**4.** The Alimony Act has codified the standards to be applied in determining an alimony award. *Brodak,* 294 Md. at 29, 447 A.2d 847; *see also* Md.Code Ann., Fam.Law Art., § 11–106(b) (listing factors).

**5.** Art. 16, § 5(a), which contained the only statutory limitation on the award of alimony, provided as follows:

In all cases where alimony or alimony pendente lite and counsel fees are claimed, the court shall not award such alimony or counsel fees unless it shall appear from the evidence that the wife's income is insufficient to care for her needs.

*See also Id.* (Supp.1976) (substituting "spouse's" for "wife's" and "his or her" for "her").

discretion of the chancellor. The Court of Appeals has the right to review the amount of alimony allowed, but the award should not be disturbed unless the chancellor's discretion was arbitrarily used or his judgment was clearly wrong.

*Id.* 206 Md. at 519–20, 112 A.2d 466 (emphasis added; citations omitted). *See also Brodak,* 294 Md. at 28, 447 A.2d 847; *Willoughby v. Willoughby,* 256 Md. 590, 592, 261 A.2d 452 (1970) (both citing *Lopez* ). The decision of whether to award alimony depended on the circumstances of the parties *at the time of the decision. Benner v. Benner,* 37 Md.App. 367, 370, 377 A.2d 582 (1977); *accord, Kingsley v. Kingsley,* 45 Md.App. 199, 412 A.2d 1263, *cert. denied,* 288 Md. 737 (1980) (interpreting *Benner* ).

■ Prior to the enactment of the Alimony Act, an *award* of alimony could be modified at *any* time, based on a change in circumstances, whether or not the court expressly reserved. *Bart v. Bart,* 182 Md. 477, 480, 35 A.2d 125 (1943) (citing *Knabe,* 176 Md. at 616, 6 A.2d 366). *See also Brodak,* 294 Md. at 29, 447 A.2d 847 ("An award of alimony is always subject to change if the circumstances, needs, and pecuniary condition of the parties change."); *Willoughby,* 256 Md. at 595, 261 A.2d 452 ("As always, if there are substantial changes in needs, financial conditions, and circumstances of the parties the court retains continuing jurisdiction to amend its decree accordingly."); *Lopez,* 206 Md. at 520, 112 A.2d 466; *Foote v. Foote,* 190 Md. 171, 177, 57 A.2d 804 (1948); *Cole v. Cole,* 44 Md.App. 435, 435, 409 A.2d 734 (1979); *Benner,* 37 Md.App. at 370, 377 A.2d 582; *Simpson,* 18 Md.App. at 629, 308 A.2d 410; *Lott v. Lott,* 17 Md.App. 440, 444–47, 302 A.2d 666 (1973).

In *Benner,* 37 Md.App. 367, 377 A.2d 582, we said:

Without evidence as to when the estate will be distributed, the chancellor had no basis upon which to gauge the effect of this expected inheritance on the *present* needs of appellant. It is clear, however, that this mere expectation of inheritance afforded appellant no financial support at the time alimony was awarded. The fact that appellant may not

be destitute "over any long term" is virtually irrelevant. **Alimony is to be awarded based on circumstances existing at the time of the award. If those circumstances change, the award can be modified.**

37 Md.App. at 371, 377 A.2d 582 (italics in original; boldface added). *See also Knabe,* 176 Md. at 615, 6 A.2d 366 (" 'The decree for alimony is based upon the conditions existing at the time at which it is rendered....' " (citation omitted)).

Moreover, before the Alimony Act, equity courts commonly reserved jurisdiction over alimony, even when they declined to award alimony. *Turrisi,* 308 Md. at 522, 520 A.2d 1080 (citing cases and treatises). "The effect of a reservation of jurisdiction as to alimony was to enable the court to award alimony, in appropriate circumstances, long after the grant of an absolute divorce." *Id.* (citing *Johnson v. Johnson,* 202 Md. 547, 560, 97 A.2d 330, *cert. denied,* 346 U.S. 874, 74 S.Ct. 126, 98 L.Ed. 382 (1953) (Hammond, J., conc.)). Once a court reserved jurisdiction, the court's power to award alimony at some later date was exactly the same as its power to modify a prior award. *Johnson,* 202 Md. at 560, 97 A.2d 330 ("Under [*Marshall v. Marshall,* 164 Md. 107, 163 A. 874 (1932) ], if the Court awarded alimony of one cent a year, it could at any time ... require the husband if his circumstances warranted it, to pay ten thousand dollars a year. Also, by adding four words—'The Court retains jurisdiction'—alimony could be given for the first time twenty years after the decree.").[6] Only if the chancellor denied alimony *and* refused to reserve jurisdiction would the court be unable to make a later award. *Knabe,* 176 Md. at 616, 6 A.2d 366 (citing *Marshall* ); *see also Abell v. Abell,* 12 Md.App. 99, 107, 277 A.2d 629, *cert. denied,* 263 Md. 709 (1971) ("[W]here an absolute divorce ... decree does not contain an award of alimony or a reservation of jurisdiction to

---

6. Under the present law, a chancellor's power to reserve is more limited. For example, "Reservation ... merely on an allegation that [a wife's] future ability to support herself was ' "of necessity uncertain," ' is no longer proper." *Turrisi,* 308 Md. at 529, 520 A.2d 1080.

award alimony at a future time, the right to alimony is forever barred.").

■ Equity courts had broad discretion over the decision to reserve jurisdiction. *Turrisi*, 308 Md. at 521–28, 520 A.2d 1080 (Alimony Act did not alter the chancellor's inherent power to reserve, and the exercise of that power is discretionary). For example, in *Buehler v. Buehler*, 229 Md. 317, 182 A.2d 877 (1962), the Court upheld a reservation of jurisdiction based solely on a wife's bald allegation "that the ability to support herself in the future was 'of necessity uncertain'...." *Id.* at 319–21, 182 A.2d 877. As with an award of alimony, so long as the chancellor's exercise of discretion as to reservation was not arbitrary or clearly wrong, the decision would not be disturbed on appeal. *See Abell*, 12 Md.App. at 106–07, 277 A.2d 629 (reversing and remanding only because, in contrast to chancellor's well explained and well supported denial of alimony, chancellor's failure to reserve lacked any explanation or reference to the evidence, and may have been unintentional).

■ The foregoing discussion demonstrates that the chancellor's express reservation in the 1975 Order permits revisitation of alimony based on almost any change in circumstances.[7] In contrast with post-Act constraints on reservation, the chancellor's reservation in 1975 was not limited to those changes in circumstances that were *foreseeable* at the time of the reservation.[8]

---

**7.** Mr. Jensen's increase in income would not, by itself, necessarily constitute a "change" for the purposes of revisiting alimony. *Lott*, 17 Md.App. at 447 & n. 2, 302 A.2d 666. But Ms. Jensen's present inability to support herself could. *Id.* at 445, 302 A.2d 666.

**8.** It is unlikely that the reservation in the 1975 Order was based on foreseeable problems, such as an expectation that Ms. Jensen's then-manifested medical problems would worsen. In the court's letter to Ms. Jensen, sent immediately after the hearing in October, 1975, the court said that it denied alimony because Ms. Jensen was earning about as much as Mr. Jensen. Significantly, the letter did not say that the termination of alimony was based on the fact that Ms. Jensen's physical condition did not create a financial burden.

The fact that appellant waited seventeen years before asking for review does not, by itself, abrogate her right to pursue alimony; an award of alimony would not be barred by laches [9] if the former spouse has not been prejudiced. "In fact, [the former spouse] has been financially benefited [sic] because he has been free from any payments for [that time]. He may not have expected any further demands upon him, but *he is presumed to know that demands might be made upon him, and he is not injured by the fact that they were not.*" *Id.* (emphasis added). Further, in *Weidner v. Weidner*, 78 Md. App. 367, 553 A.2d 263 (1989), this Court held that, to demonstrate prejudice with respect to a twelve-year delay in seeking back alimony, the husband must show "that he had *changed his position relying on the belief* that he was no longer responsible for alimony payments to his ex-wife." *Id.* at 375, 553 A.2d 263 (emphasis added). Once jurisdiction has been reserved, then, the passage of time does not prevent the court from revisiting the issue of alimony. "The power of the court cannot be cut down by the failure of the wife to ask for its exercise at a time when she perhaps did not want it." *Bart,* 182 Md. at 480, 35 A.2d 125.

We recognize that the present policy of this State is to limit alimony, where appropriate, to a definite term in order to provide each party with an incentive to become fully self-supporting. *Tracey,* 328 Md. at 391, 614 A.2d 590; *Turrisi,* 308 Md. at 524–25, 520 A.2d 1080; *Bricker v. Bricker,* 78 Md.App. 570, 573–74, 554 A.2d 444 (1989). *See also* Md.Code Ann., Fam.Law Art., § 11–106(c) (authorizing indefinite alimony under limited circumstances). Certainly, the present policy

---

**9.** Laches is defined as

"an inexcusable delay, without necessary reference to duration, in the assertion of a right, and, unless mounting to the statutory period of limitations, mere delay is not sufficient to constitute laches, if the delay has not worked a disadvantage to another." Before the defense of laches may be successfully invoked, two elements must be shown: (1) an undue lapse of time; and, (2) some disadvantage or prejudice to the party asserting the defense.

*Weidner v. Weidner,* 78 Md.App. 367, 374–75, 553 A.2d 263 (1989) (citations omitted).

contrasts with the policy in effect before the Alimony Act. *Turrisi*, 308 Md. at 524–26, 520 A.2d 1080 (contrasting the law before and after the Alimony Act). Indeed, one of the purposes of the Alimony Act was to *change* the focus of alimony from a form of lifetime pension toward a "bridge" to self-sufficiency. *See Report of the Governor's Commission on Domestic Relations Laws* 1 (1980).

The Court recognized in *Turrisi* the radical change with respect to a chancellor's discretion to reserve resulting from the Alimony Act:

> [I]n view of the Act's emphasis on promotion of economic self-sufficiency, its favorable approach to alimony for a definite period, and its opposition to the notion of alimony as a lifetime pension, it would not be appropriate to reserve simply because there may be some vague future expectation of circumstances that might show a basis for alimony. By the same token, the possibility that a claimant might become aged, infirm, or disabled, or that standards of living could conceivably be unconscionably disparate at some unknown future date ... would not provide a basis for reservation. **Reservation** like that approved in *Buehler*, [229 Md. at 319, 182 A.2d 877], **where a wife obtained reservation merely on an allegation that her future ability to support herself was " 'of necessity uncertain,' "** is no **longer proper.**

308 Md. at 528–29, 520 A.2d 1080 (emphasis added, citations omitted). *See also Id.* at 529–30, 520 A.2d 1080 (citing Alimony Act for examples of limitations placed by it on the discretion to reserve). The Court concluded that, in contrast with pre–1980 law, reservation is now appropriate only where "the record contains evidence from which the chancellor could find that the claimant, *in the reasonably foreseeable future*, will be in circumstances that would justify an award of rehabilitative or indefinite alimony...." *Id.* at 530, 520 A.2d 1080 (emphasis added).

We acknowledge that the reservation at issue here—based on speculation and uncertainty, rather than on particularized,

foreseeable problems—would not survive if made today; it would, in effect, be the "lifetime pension" or "insurance policy" that the legislature sought to eliminate with the Alimony Act. But this is, after all, a case governed by pre-Act law. Our analysis convinces us that the trial court erred in holding, as a matter of law, that appellant was barred from seeking alimony seventeen years after the court terminated Ms. Jensen's alimony but nonetheless reserved jurisdiction. Accordingly, appellant is entitled to a remand, in order that the court may conduct an exceptions hearing addressing the merits of the Petition.

What we have said should not be construed as a conclusion that Ms. Jensen is *entitled* to an award of alimony; that decision will rest with the chancellor after reviewing the evidence in light of the applicable law. On remand, the court should consider whether, *inter alia,* Ms. Jensen suffered a change of circumstances which would support an award of alimony, and whether Mr. Jensen has actually changed his position based on Ms. Jensen's inaction. As remand is appropriate, we shall not reach Ms. Jensen's second issue.

**JUDGMENT VACATED. CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**