Filed 11/26/13  Marriage of Caffery and Burns CA1/4

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| In re the Marriage of LILA DE LESSELINE CAFFERY and DONALD EDWARD BURNS. | |
| LILA DE LESSELINE CAFFERY,<br><br>        Appellant,<br><br>v.<br><br>DONALD EDWARD BURNS,<br><br>        Respondent. | A133610<br><br>(San Francisco County<br>Super. Ct. No. FMS-79-754294) |

        The petition for rehearing is denied.  The opinion filed herein on October 29, 2013, is ordered modified to include a footnote after the first sentence on page four:

        The record reflects that Burns may have made several $800 payments to Caffery in 2010.  The evidence, however, is lacking for us to determine if in fact the payments were made, and if so, the nature or purpose of any payments.

        This modification does not effect a change in the judgment.


Dated:  _____        Signed:  _____


1

Filed 10/29/13  Marriage of Caffery and Burns CA1/4 (unmodified version)

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re the Marriage of LILA DE LESSELINE CAFFERY and DONALD EDWARD BURNS. | |
| LILA DE LESSELINE CAFFERY,<br><br>        Appellant,<br><br>v.<br><br>DONALD EDWARD BURNS,<br><br>        Respondent. | A133610<br><br>(San Francisco County<br>Super. Ct. No. FMS-79-754294) |

Lila De Lesseline Caffery appeals from a final statement of decision regarding spousal support.  While generally a statement of decision is not an appealable order, we have discretion to treat the statement of decision as appealable when it is signed and filed and when it constitutes the trial court's final decision on the merits.  (*Alan v. American Honda Motor Co., Inc.* (2007) 40 Cal.4th 894, 901; *Estate of Lock* (1981) 122 Cal.App.3d 892, 896–897.)  The court's statement of decision here meets those requirements.  Accordingly, we treat the decision as appealable.

Caffery contends that she is entitled to recover unpaid spousal support due from 1982 to the present, and that respondent Donald Edward Burns has a continuing obligation to pay support.  We conclude that the matter must be remanded for further proceedings on the issue of laches.

1

## I. FACTUAL BACKGROUND

The parties were married in December 1965, and had two children, born in 1967 and 1968. They separated in January 1972, and dissolved their marriage in 1975 in the State of Maryland. In a Voluntary Separation and Property Settlement Agreement (the agreement) executed by the parties in February 1975, Burns agreed to pay Caffery the sum of $1,500 per month as alimony and child support. The amount was subject to annual increases based on the consumer price index, and the payments for Caffery's support were to continue indefinitely until her remarriage or death. In consideration of the execution of the agreement and of the property received by Caffery in the settlement, Caffery agreed to a "release of all claims and demands of every kind or nature against the Husband, including claims and demands against any inheritance which the Husband may receive, and further including all liability now or at any time hereafter existing or occurring, either on account of support, maintenance, alimony, temporary or permanent, either statutory or arising in common law incident to the marriage relation, it being understood that this settlement is a total and complete release of the Husband by the Wife of all matters and charges whatsoever, and that the Wife shall, after this settlement, require nothing of the said Husband, as though the marriage relation had never existed between them." The agreement provided that it was to be interpreted and governed by Maryland law. The provisions of the agreement were "incorporated by reference" but not "merge[d]" into the judgment.

By 1980, the parties had moved to San Francisco. In that year, the parties agreed to have the Maryland divorce judgment entered as a California judgment, and settled various issues pertaining to arrearages and property division, the terms of which were also entered as a judgment.

In 1982, Burns and Caffery stipulated to the entry of another judgment setting forth an updated amount of arrears, setting the consumer price index increase in the family support payment, and setting additional sums owed from Burns to Caffery. Also in 1982, Burns moved to modify the support obligation, contending that due to inflationary increases, his obligation had nearly doubled and was beyond Caffery's needs

2

and his ability to pay. The trial court concluded that of the $1,500 support payment, $800 was attributable to spousal support and was non-modifiable under Maryland law.[1] The court determined that the remaining $700 was modifiable and the matter of child support arrears and modification was continued for further proceedings. Burns appealed only that part of the court's order finding that the spousal support provisions were non-modifiable. (*In re Marriage of Lila and Donald Burns* (May 24, 1984, A023340 [nonpub. opn.] (*Burns I*).) Division One of the First Appellate District affirmed, holding that the provisions of the agreement considered together indicated that the parties intended the spousal support payments to be contractual and therefore non-modifiable by the court. (*Id.* at pp. 1, 4, 9.)

In March 1985, the trial court entered an order modifying the amount of child support to $860 per month per child; calculating the spousal support payments at $1,536.28 for the period April 1, 1983 through March 31, 1984, and $1,551.64 thereafter, pending a further adjustment on April 1, 1985, and calculating arrearages of child and spousal support as $19,022.82. The court noted that the arrearages were exclusive of the balance due on the prior stipulated arrearages of $47,276.75.[2] Burns was also ordered to pay an additional $700 per month per child for medical, clothing, and other expenses.

According to Caffery's records, she received a total of $66,694.12 in spousal support and $108,434.00 in child support for the period from October 31, 1984 to December 29, 1995. At that point, the two children of the marriage were 27 and 28 years old.[3]

---

[1] Maryland law now provides that a court may modify an agreement for support made after April 13, 1976. (See Md. Ann. Fam. Law, § 8-103, subd. (c).)

[2] The $19,022.82 in arrearages included more than $13,000 in payments owed on the previous arrearages of $47,276. Therefore the court's statement that the current arrears were "exclusive" of the prior arrears was not entirely accurate.

[3] Under the agreement, Burns was obligated to pay the children's college and professional school tuition and expenses through the age of 25 years. In March 1985, the court, in its order modifying child support, noted that the parties agreed that payments for child support after the children reached 18 years of age were subject to modification.

3

Burns ceased to make any payments for spousal support or arrearages after December 1995. In late 1994 or 1995, Burns informed Caffery that he could no longer afford to make payments. Caffery acknowledged that Burns told her in 1996 or 1997 that he had no money.

In or about 2008, Caffery learned that Burns had inherited some property from his late wife, Hilary Goldstone. She contacted an attorney to determine if she could collect support arrearages. On October 1, 2008, she obtained an abstract of support judgment indicating that Burns owed $553,646.76 in spousal support arrearages, of which $315,494.14 constituted accrued interest. Burns did not become aware of the abstract until May 2010, when he was served with an order to appear for a judgment debtor examination and a petition to enforce the support order in the Alameda County Probate Court. The probate matter arose because Caffery sought to obtain the support arrearages out of Burns's inheritance. Caffery had also recorded a lien against the home Burns was living in with his current wife, Sally Smith. The property was Smith's separate property before her marriage with Burns, but was transferred to community property in late 2007. At the time, Burns believed that he had no outstanding obligation to Caffery.

On November 29, 2010, Burns moved to vacate the abstract of judgment, to find that he had no outstanding spousal support obligation to Caffery, and to enjoin her from any further enforcement actions. Caffery, in turn, moved for an order determining the amount of support arrearages owed by Burns for the years 1985 through 2010. On August 10, 2011, following extensive briefing and a hearing on the issues, the trial court issued a final statement of decision. The court found that the issues were governed by Maryland law. The court further ruled that the court of appeal's decision of May 24, 1984 was the law of the case. Applying Maryland law, the court found that Caffery's case was barred by the 12-year statute of limitations applicable to a contractual spousal support obligation. This appeal followed.

## II. DISCUSSION

Caffery's primary contention is that the California Family Code governs enforcement of her claims for spousal support arrearages. She argues that the prior

4

support orders in this case entered in California require that they be enforced in accordance with the Family Code. Specifically, Caffery argues that the support agreement is enforceable under Family Code section 4500 because it is a "support order" as that term is defined in Family Code section 155. Section 155 defines a support order as a "judgment or order of support in favor of an obligee, whether temporary or final, or subject to modification, termination, or remission, regardless of the kind of action or proceeding in which it is entered." We conclude, however, that California law does not apply.

In the appeal before Division One the parties agreed that *Maryland* law controls the interpretation of the parties' marital settlement agreement, and the court applied Maryland law in reaching its decision. (*Burns I,* at pp. 4–9.) The court agreed with Caffery that the agreement was for "contractual support," which is modifiable only by consent of the parties; it rejected Burns's contention that the agreement was intended as "technical support," which is subject to modification by the court. (*Burns I, supra,* at pp. 4, 9.) In all of those respects, that decision is the law of the case. Hence, Caffery's arguments that various California Family Code sections are applicable to enforceability of her Maryland support judgment are without merit.

"The law of the case doctrine states that when, in deciding an appeal, an appellate court 'states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout its subsequent progress, both in the lower court and upon subsequent appeal.' " (*Kowis v. Howard* (1992) 3 Cal.4th 888, 892–893.) "The doctrine promotes finality by preventing relitigation of issues previously decided." (*Yu v. Signet Bank/Virginia* (2002) 103 Cal.App.4th 298, 309.) "The validity or invalidity of a document, judgment, or order, and the proper construction of it, are obviously questions of law to which the doctrine of law of the case applies." (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 466, p. 524 and cases cited.)

Caffery concedes that the law of the case applies to the court of appeal's decision insofar as it concludes that the support provisions are non-modifiable, but contends

5

nonetheless that the issue of whether she had a right to spousal support as opposed to a "mere contractual right" to such support payments was not decided. Caffery's contention is belied by the record.

In the prior appeal, one of the main issues before the court was whether the provision for spousal support under the agreement was modifiable, e.g., "technical alimony" or if it provided a fixed contractual payment that could not be modified by the court. (*Burns I, supra,* at pp. 4–9.) The Court of Appeal, applying Maryland law, as required by the agreement, explained the distinction under Maryland law between technical alimony (modifiable) and contractual spousal support (non-modifiable). (*Id.* at p. 4.) Under Maryland law, spousal support is considered technical alimony only if certain conditions are met, including that it terminate on the remarriage or death of the wife or the death of the husband, and that it can be modified by the court in light of changed circumstances. (*LaChance v. LaChance* (Md. App. 1975) 346 A.2d 676, 679–680.) However, if the agreement for alimony does not meet all of the requirements of alimony, "the obligation to pay rests upon the agreement of the parties, and does not become alimony" and may not be modified by the court in the absence of collusion, mistake or fraud. (*Id.* at p. 680.)

The court of appeal in *Burns I* concluded that the agreement did not provide for technical alimony because it specifically stated that its terms could be modified or waived only upon an agreement signed by the parties. (*Burns I, supra,* at pp. 2, 7–8.) The court held, "[t]he several provisions [of the agreement], considered together, clearly indicate that the parties did not intend that the agreed spousal support payments were subject to later court modification upon the request of either party." (*Id.* at p. 8.) The court also noted that Caffery expressly released any claims "<u>on account of support, maintenance, alimony</u>, temporary or permanent, either statutory or arising in common law <u>incident to the marriage relation</u>. . . ." (*Burns I,* at p. 8 & fn. 5 [underlining in opinion].) Consequently, the court determined that the spousal support provision was not technical alimony. (*Id.* at p. 9.) The court therefore necessarily concluded that the spousal support provision of the agreement provided contractual spousal support.

6

Caffery nevertheless argues that the three California orders characterize the payments to be made by Burns as "orders for support" and not as "orders for mere contractual money payments," and Burns's failure to appeal "the trial court's classification of the nature of the monies due to [her] as 'spousal support' " means that Burns's contractual obligations have been converted to a California spousal support order. We disagree, for three reasons.

First, the courts' orders did not, and indeed, could not, modify the nature of Burns's obligation. As has been described, Division One of this court determined in the prior appeal that Caffery's right to support was contractual under Maryland law. Both we and the trial court are bound by that determination; it is the law of the case. (*Kowis v. Howard, supra,* 3 Cal.4th at pp. 892–893.)

Second, as the prior appeal noted, "[t]he label given to the allowance is not determinative." (*Burns I, supra,* at p. 6; see, also, *Rasmussen v. Rasmussen* (1969) 275 Cal.App.2d 443, 449–450 [res judicata barred a party from relying on a reference in a court order to an obligation as alimony when a prior decision had determined the obligation was not alimony].) We note that the agreement itself characterizes the payments due as "alimony" and "support." Thus, the courts' use of the term "spousal support" is entirely consistent with the notion that the courts were setting and enforcing Caffery's right to support under the agreement, and not issuing California family law support orders.

Third, Caffery herself argued in the prior appeal that the agreement "manifests an expressed intention by the parties to effect an immediate waiver and release of technical alimony rights (and its attendant uncertainties) in exchange for *contractual support. . . .*" (Emphasis added.) As Burns points out, "Caffery cannot 'have it both ways' by arguing that the obligations were contractual in 1984 and yet some how converted to spousal support in the intervening [25] years. . . ." (Italics omitted.) Caffery cannot now change course. (Cf. *Ernst v. Searle* (1933) 218 Cal. 233, 240–241 ["A party is not permitted to change his position and adopt a new and different theory on appeal. To permit him to do

so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant"]; 9 Witkin, Cal. Procedure, *supra*, Appeal, § 407, pp. 466-468.)

We therefore reject Caffery's contention that simply by "domesticating" her Maryland Decree in California pursuant to which enforcement orders were issued, she has acquired the right to unmodifiable spousal support under the California family law.

*Knodel v. Knodel* (1975) 14 Cal.3d 752, 766, cited by Caffery, stands for the proposition that our state courts will give comity to the law of a sister state and give full force and effect to an agreement made under the law of the sister state. It does not mean as Caffery argues, that we will enforce a sister state's contractual agreement for support in accordance with California's laws for spousal support.

Caffery argues that the language in the agreement releasing Burns from any claims or demands for support in consideration for executing the agreement did not mean that the parties intended to waive her right to receive "spousal support or alimony as such"; rather, the agreement established that her "right to support arising out of the parties' divorce was solely as prescribed in the Agreement, which mandated that [Burns] pay certain monies to her . . . for 'support, maintenance and alimony.' " This is in contrast to the first appeal, in which Caffery was adamant that the agreement "expresses the intention to *completely settle and release all marital rights* . . . prior to and *independent of the divorce decree*." (Emphasis added.) She also argued that the release was intended to waive her right to "Court-imposed technical alimony . . . rather than contractual alimony which is a creature of consent." The court of appeal agreed, adopting Caffery's position that her right under the agreement was *not* technical alimony but a non-modifiable contractual support obligation. The court of appeal's conclusion that her right was a contractual one to be construed under Maryland law forecloses her argument that she is now entitled to enforce her right under California's statutory provisions for support. As the trial court stated in its statement of decision, "To accept [Caffery's] argument would be to give her the benefit of the Court of Appeal decision that her right to this money is not subject to modification or termination; to find that [she] also has a right to 'support, maintenance and alimony' in California by the mere filing of the

8

Maryland decree in California; and to hold that a material term of the [agreement] — the release — is therefore rendered meaningless. The law of the case is meant to avoid such a result."

Caffery also contends that the trial court erred in relying on *Nedlloyd Lines B.V. v. Superior Court* (1992) 3 Cal.4th 459 (*Nedlloyd*) in determining whether Maryland or California law controlled the applicable statute of limitations. We discern no error.

*Nedlloyd* set forth the test for determining whether a parties' contractual choice-of-law provision was enforceable. (*Nedlloyd, supra,* 3 Cal.4th at pp. 464–466.) As the trial court correctly found, the decision in the prior appeal is consistent with the analysis in *Nedlloyd* concerning enforcement of choice of law provisions.[4] (*Burns, supra,* at p. 4.) Moreover, Caffery's argument to the contrary is inconsistent with her position in the prior appeal in which she did not dispute that Maryland law controlled the interpretation of the agreement. (*Ibid.*)

The Maryland statute of limitations applicable here provides that an action shall be filed within 12 years after the cause of action accrues. (Maryland Courts and Judicial Proceedings Code, § 5-102(a).) In *O'Hearn v. O'Hearn* (Md. App. 1995) 653 A.2d 446, 450–451, the court applied the 12-year statute of limitations of section 5-102 in an action to enforce an agreement for child support payments incorporated into a Maryland divorce judgment. There, the court explained that the 12-year statute of limitations applies to claims for support arrearages. (*Id.* at p. 449.) In applying that statute, the court concluded that claims for arrearages were not barred as to those payments which have

---

[4] California favors enforcement of choice-of-law provisions and follows the Restatement Second of Conflict of Laws, section 187, subdivision (2) under which the court first determines either: "(1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law." (*Id.* at p. 466.) If either test is met, the court enforces the choice-of-law provision unless it conflicts with a fundamental policy of California. (*Ibid.*) If there is a conflict, the court then must determine whether California has a materially greater interest than the chosen state in the determination of the issue, and if so, the court will not enforce the choice-of-law provision. (*Ibid.*)

become due within the 12 years preceding the proceedings for enforcement. (*Id.* at pp. 449–451.)[5] Applying these principles, Caffery's claims for arrearages are not barred as a matter of law by the Maryland statute.

The trial court thus erred in ruling that Caffery could not bring her claim for arrearages after 12 years of nonpayment had passed. We conclude, however, that there is a substantial issue as to whether the evidence in the record supports a defense of laches under Maryland law. While the parties briefed the issue below, the court did not address the issue in its statement of decision.

The Maryland courts have considered the defense of laches in cases involving alimony and child support. While we have not found a case factually similar to the matter here, in *Jensen v. Jensen* (Md. App. 1995) 654 A.2d 914, there was a post-divorce order in which the trial court terminated alimony but reserved jurisdiction over the parties to address the matter in the future. (*Id.* at pp. 917, 919.) Seventeen years later, the former wife petitioned for alimony claiming that due to changed circumstances she was no longer able to support herself. (*Id.* at p. 917.) The trial court denied the petition, concluding the reservation of jurisdiction did not include circumstances that were not foreseen at the time of the order. (*Id.* at p. 918.) The appellate court disagreed and remanded the matter to the trial court to consider whether the wife was entitled to an award of alimony based on a change of circumstances despite a 17-year delay and whether the claim was barred by laches because the husband would be prejudiced due to a change in his position based on the wife's inaction. (*Id.* at pp. 921, 922.) In so deciding, the court took note of Maryland's then-current policy of limiting alimony to a definite term in order to provide each party with an incentive to become fully self-supporting, and permitting a reservation of jurisdiction based only upon foreseeable changes in circumstances. The court concluded, however, that under the law existing at

---

[5] The trial court found that Caffery's action accrued in 1994 or 1995. The record reflects that Burns's last regular payment to Caffery for spousal support was made in December 1994.

10

the time of the order, the 17-year delay did not *per se* abrogate the wife's right to pursue support. (*Id.* at pp. 921–922.)

Other Maryland support arrearage cases have rejected the application of the laches defense where the obligors could not show a change in position in reliance on the belief their obligations had ended. (See, e.g., *Bland v. Larsen* (Md. App. 1993) 627 A.2d 79, 82–84; *Weidner v. Weidner* (Md. App. 1989) 553 A.2d 263, 267–268.) Here, however, there is evidence suggesting that Burns has been prejudiced by Caffery's delay in filing this action. For example, Burns averred that in reliance on his belief that Caffery had allowed the support obligation to lapse—due to her successful business and ability to be self-supporting and his lack of significant income—he made substantial cash payments to the parties' adult children, and made the decision to put his current wife's separate property home in joint title as an estate planning measure. We therefore conclude a remand is appropriate to allow the trial court to conduct proceedings to determine whether Caffery's claim is barred by laches.[6]

We briefly address one additional issue raised by Caffery. She argues that the support provisions of the agreement must be enforced in accordance with the Uniform Interstate Family Support Act, 42 U.S.C. § 666(f); Fam. Code, § 4900, et seq. (UIFSA). The UIFSA governs child and spousal support orders in interstate cases. (*In re Marriage of Newman* (2000) 80 Cal.App.4th 846, 849.) It was enacted in Maryland in 1996 and in California in 1997. (Md. Code Ann. Fam. Law, §§ 10-301 et seq.; Fam. Code, § 4900.) It governs the jurisdiction of the courts to modify spousal support orders. (*In re Marriage of Rassier* (2002) 96 Cal.App.4th 1431, 1437.) As relevant here under both California and Maryland law, "[t]he law of the issuing state governs the nature, extent,

---

[6] We also note there is an issue concerning whether the release in the agreement has any bearing on this action. In the agreement, Caffery released all "claims and demands of every kind or nature against [Burns] including claims and demands against any inheritance which [Burns] may receive," in consideration of "the execution of [the agreement] and of the property set apart to [Caffery] under the terms [t]hereof. . . ." We express no views on the effect, if any, of this provision.

11

amount, and duration of current payments and other obligations of support and the payment of arrearages under the order." (Fam. Code, § 4953, subd. (a); Md. Code Ann. Fam. Law, § 10-343(a), see *In re Marriage of Rassier*, *supra*, 96 Cal.App.4th at pp. 1436–1437.)

Caffery seeks to benefit from the provisions of the UIFSA that provide a longer statute of limitations for collecting support arrearages. (See Fam. Code, § 4953, subd. (b) [In a proceeding for arrearages, the statute of limitations under the laws of the state or of the issuing state, whichever is longer, applies], Md. Code Ann. Fam. Law, § 10-343, subd. (b) [same].) The UIFSA, however, does not apply to this case. As the prior appeal determined that the support payments under the agreement were fixed contractual payments and not alimony, they were not subject to modification by the court or the UIFSA, which governs the jurisdiction of the courts to modify support payments. (*In re Marriage of Rassier*, *supra*, 96 Cal.App.4th at p. 1437.)

*Trend v. Ball* (1997) 57 Cal.App.4th 1092, cited by Caffery, is distinguishable. The *Trend* court relied on the Federal Full Faith and Credit for Child Support Orders Act, 28 U.S.C. § 1738B, in holding that the trial court was required to apply the forum's statute of limitations or that of the issuing state, whichever statute provided the longer period of limitation. (*Id.* at p. 1097.) There, a Montana child support order was registered in California after the Montana statute of limitations for collection had expired. (*Id.* at pp. 1093–1094.) Inasmuch as California law provided that a judgment for child or spousal support is enforceable until paid in full (Fam. Code, §§ 291, 4502), the court held that the father was required to pay the child support arrearages. (*Id.* at pp. 1097–1098.) The court noted that the federal law altered choice of law rules. *Trend*, however, did not involve a situation where the parties had a contractual agreement for spousal support which contained a choice-of-law provision.

Nor, as explained in *Scheuerman v. Hauk* (2004) 116 Cal.App.4th 1140, 1144–1145, did *Trend* involve a case where the issue of the enforceability of the order had previously been decided. Thus, the *Scheuerman* court determined that California could not disregard a ruling by the Arizona court that a judgment for child support—which the

12

wife sought to enforce in California—had already expired in Arizona, the issuing state. (*Id.* at p. 1145.)  The court reasoned that "reviving expired and unenforceable judgments in this manner could lead to untenable results that are inconsistent with the intent of the law.  For example, parties could attempt to enforce out-of-state judgments that had been expired for many years."  (*Ibid.*)

Here, Caffery seeks to take advantage of a California statute of limitations to enforce a judgment setting amounts due under a spousal support agreement that has been adjudicated to be subject to Maryland law, while having failed to take any enforcement actions for more than a decade.  As the trial court found, Caffery cannot now be heard to argue that she is entitled to support in accordance with California law when she argued in the prior appeal that California law did not apply and the court had no power to modify or terminate spousal support.  (*Burns I, supra,* at pp. 3, 7–8; see, also *Levin v. Ligon* (2006) 140 Cal.App.4th 1456 [ex-husband was barred from arguing that he had interest in ex-wife's financial assets when he received compensation in a prior action after asserting that he had lost all his rights to those assets].)

### III.  DISPOSITION

The judgment is reversed and the matter is remanded for proceedings consistent with this opinion.  The parties shall bear their own costs on this appeal.


_____

Rivera, J.


We concur:


_____

Ruvolo, P.J.


_____

Reardon, J.